NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| JON J. LACKNER, | : | CIV. NO. 22-4951 (RMB-AMD) |
|  | : |  |
| Plaintiff | : | **OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| UNITED STATES OF AMERICA, et al., | : |  |
|  | : |  |
| Defendants | : |  |

**RENÉE MARIE BUMB, Chief United States District Judge**

**THIS MATTER** comes before the Court upon Defendants United States of America, Michael Carvajal, Nicole English, Kimberly Kodger, Lamine N'Diaye, David E. Ortiz, and Nicoletta Turner-Foster's (collectively "Defendants" and individually "the Government" or "Government agents") Motion to Dismiss, Dkt. No. 48, pro se Plaintiff Jon J. Lackner's ("Plaintiff") Second Amended Complaint ("SAC" Dkt. No. 21).  Plaintiff filed a brief in opposition to the motion to dismiss ("Pl's Opp Brief" Dkt. No. 50) and Defendants filed a reply brief ("Defs' Reply Brief" Dkt. No. 55) in further support of dismissal.[1]  Pursuant to Federal Rule of Civil

---

[1] Plaintiff filed a sur-reply, stating that no further briefing is necessary, and he relies on his brief in opposition to Defendants' motion to dismiss.  Dkt. No. 56.

Procedure 78 and Local Civil Rule 78.1(b), the Court did not hear oral argument.  For the reasons set forth below, the Court will grant Defendants' motion to dismiss.

## I.    PROCEDURAL HISTORY

In August 2022, Plaintiff, *pro se*, filed a complaint about COVID-19 conditions in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix").  Compl., Dkt. No. 1.  In his second amended complaint ("SAC" Dkt. No. 21), filed on July 26, 2023, Plaintiff brought *Bivens* claims for damages against individual defendants, Michael Carvajal, Director of Bureau of Prisons ("BOP"); Nicole English, BOP Northeast Regional Director; FCI Fort Dix Warden David Ortiz; FCI Fort Dix Warden Lamine N'Diaye, Associate Warden Kimberly Kodger, and Clinical Director Nicoletta Turner-Foster (Third and Fourth Causes of Action), and negligence (Second Cause of Action) and gross negligence (First Cause of Action) claims under the Federal Tort Claims Act against the United States.  SCA, Dkt. 21.  Plaintiff further requests injunctive and equitable relief.[2]  *Id.* (Prayer for Relief).

## II.    THE SAC

The Court accepts the well-pled facts in the SAC as true when determining Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Plaintiff, 58-years-old at the time the

---

[2] "The remedies available" under the FTCA "are either an administrative settlement, as allowed by 28 U.S.C. § 2672, or traditional tort damages, as afforded under 28 U.S.C. § 1346(b)."  *Vanderklok v. United States*, 868 F.3d 189, 201 (3d Cir. 2017) (footnote omitted).

SAC was filed, suffers from cardiovascular disease, arteriosclerosis, hypertension, hyperlipidemia osteoarthritis, obesity, and he is a former smoker. ("COVID").  SAC ¶ 11.  These conditions make him vulnerable to severe illness if infected by COVID-19.  *Id.*  Plaintiff alleges Defendants were negligent, grossly negligent and deliberately indifferent to a serious risk to his health posed by COVID because they failed to take reasonable measures to stop the spread of COVID at FCI Fort Dix from the beginning of the pandemic.  *Id.* ¶¶ 213-54.  Specifically, Plaintiff alleges Defendants failed to adequately reduce the prison population, conduct COVID testing, halt prison transfers, cancel work details, supply adequate hygiene products, provide effective PPE, and provide social distancing.  *Id.*, ¶¶ 218-19, 231-32, 244.

All inmates in Plaintiff's housing unit, 5812, were tested on October 20, 2020, and the results from an outside lab were returned five days later.  *Id.* ¶ 90.  Plaintiff's cellmate, with whom he shared a two-man cell, was one of the 54 inmates whose test results were positive for COVID, and he was removed to quarantine.  *Id.*  During the five-day interim when unit 5812 waited for the lab results, the sick inmates likely continued to infect others in the unit, and rapid-tests were not performed on those whose tests came back negative.  *Id.*  Staff "condensed the COVID-negative inmates" from Plaintiff's housing unit "with an unknown number of newly positive cases, by forcibly evicting the entire third floor and relocating them over the remaining two floors."  *Id.*  Inmates who had previously tested negative soon began testing positive.  *Id.* ¶ 112.  The move of COVID-negative inmates in unit 5812 to the first two floors was done to make the third floor an isolation unit for the 54 infected inmates.  *Id.* ¶

90.  Days before this transfer, Warden Ortiz had expressed his concern over lack of isolation and quarantine space.  *Id.* ¶ 91.

When Plaintiff's roommate was removed to an isolation unit, Plaintiff briefly had a two-man room to himself, where he "could possibly have made it through the COVID wave unscathed."  *Id.* ¶ 92.  Instead, Plaintiff was moved to a twelve-man room "with no chance whatsoever to avert infection."  *Id.*  By November 10, 2020, the entire prisoner population in unit 5812 was COVID-positive.  *Id.* ¶ 121.

Not only does Plaintiff criticize BOP's early pandemic management and the FCI Elkton prisoner transfers, he alleges the pandemic lockdowns were unjustifiably prolonged and constituted cruel and unusual punishment in violation of the Eighth Amendment.  *Id.* ¶¶ 153-185.  Plaintiff was in lockdown conditions at FCI Fort Dix for 29 months, until late August 2022.  *Id.* ¶ 160.  After natural immunity and vaccinations protected inmates from severe cases of COVID, the lockdown conditions were unwarranted and caused extreme distress.  *Id.* ¶ 159.  BOP prolonged the lockdown for its own benefit, to reduce services to inmates.  *Id.* ¶ 162.

For relief, Plaintiff seeks compensatory and punitive damages, costs and fees and injunctive relief.  SAC (Prayer for Relief).

## III.   JURISDICTIONAL FACTS UNDER FED. R. CIV. P. 12(b)(1)

Defendants assert, in relevant part, the following facts in support of their jurisdictional challenge to Plaintiff's FTCA claims.

4

FCI Fort Dix is a "low security federal correctional institution with an adjacent minimum security satellite camp."  Declaration of James Reiser ("Reiser Decl.")[3] ¶ 13, Dkt. No. 48-3.  The "Low" is divided into two compounds, East and West, which are further divided into building units that can "house more than 300 people each." SAC ¶ 75. The buildings are "three stories high and consist mostly of 12-person rooms, with a smaller number of two-person rooms." *Id.*  BOP housed Plaintiff in the West compound of FCI Fort Dix during the time alleged in the complaint. *Id.* ¶ 11.

To maintain the health and safety of inmates at FCI Fort Dix during the COVID pandemic, BOP coordinated with the Centers for Disease Control and Prevention ("CDC"), the Occupational Safety and Health Administration ("OSHA"), the Department of Justice ("DOJ"), and other relevant agencies and organizations.  Reiser Decl. ¶ 5.[4]  This resulted in a multi-phased operational plan called the "Action Plan," which provided flexibility to each of BOP's 122 institutions to address unique circumstances and available resources.  *Id.*, ¶¶ 5-6.  Phase Two of the Action Plan suspended social and legal visits, inmate transfers, office staff travel, most staff training, contractor and volunteer access and tours.  *See supra* n. 4.  In the

---

[3] James Reiser was employed by the BOP at FCI Fort Dix as a Case Management Coordinator.  Reiser Decl. ¶ 3.  The Reiser Declaration was originally filed on July 8, 2022, in the *Thieme* litigation, Civ. Action No. 21-682 (RMB-AMD) (D.N.J.), which pertains to the period of the COVID pandemic at FCI Fort Dix relevant in this case. Mr. Reiser is retired from BOP.  Defs' Brief at 7, n.3.

[4] *See also* BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp
 (last visited January 27, 2025).

next 30 days, BOP would implement nationwide operations to maximize social distancing in each institution. *Id.*

The key measures taken to prevent the spread of COVID in FCI Fort Dix under Phase Nine of the BOP Action Plan August 5, 2020, included limited group gathering within the facility, screening, testing and quarantine procedures for newly admitted prisoners, screening staff for symptoms every day, mask mandates for prisoners and staff when social distancing was impossible. Reiser Decl. ¶ 6. FCI Fort Dix began updating and increasing their sanitation efforts with OSHA and CDC guidance beginning in March 2020. *See generally*, Declaration of Adam Sassaman ("Sassaman Decl.")[5] Dkt. No. 48-4.

At the time of Plaintiff's exposure to COVID in October 2020, FCI Fort Dix was following BOP Quarantine Guidance, Version 2.0, 8/7/2020, discussed in more detail below. Declaration of Dr. Farah Ahmedi[6] ("Ahmedi Decl.") ¶ 20, Ex. 1, Dkt. No. 48-5 at 15-22.

## IV.    DISCUSSION

### A.    Rule 12(b)(1) Motion to Dismiss Standard

---

[5] Adam Sassaman is the Safety and Occupation Health Administrator at FCI Fort Dix who "is familiar with and assist[ed] in implementing the March 23, 2020 CDC Guidance on Management of COVID-19 in Correctional and Detention Facilities, as well as the updated guidance disseminated to BOP by the ... CDC and available on the CDC website." Sassaman Decl. ¶¶ 3-5.

[6] Dr. Farah Ahmedi, now the Clinical Director, was a physician employed at FCI Fort Dix during the relevant time period. Ahmedi Decl. ¶¶ 1, 3. Dr. Ahmedi, through the course of her official duties, has personal knowledge of BOP's national guidance relating to COVID-19 and the measures taken at FCI Fort Dix to combat COVID-19 during the relevant time. *Id.*

Courts may dismiss a claim for lack of subject-matter jurisdiction at any time. *CNA v. United States*, 535 F.3d 132, 145-46 (3d Cir. 2008); Fed. R. Civ. P. 12(h)(3). Defendants may challenge a court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). For personal injury claims against the United States under the Federal Tort Claims Act ("FTCA"), plaintiffs have the burden to establish their claims fall within the waiver of sovereign immunity. *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008). Defendants have the burden to establish the applicability of an exception to the FTCA's waiver of sovereign immunity, which deprives a court of jurisdiction. *Id.; Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013).

There are two types of challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), facial and factual. *Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). Factual challenges to subject-matter jurisdiction permit courts to consider evidence outside the pleadings. *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 512 (3d Cir. 2007). Furthermore, in a factual attack on jurisdiction, Plaintiffs' allegations in the complaint are not entitled to a presumption of truth. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

Facial challenges to jurisdiction are different. Courts may only consider the allegations in the complaint, in the light most favorable to the plaintiff, including any documents that are referenced in or attached to the complaint. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Under Federal Rule of Evidence 201(b), in facial challenges to jurisdiction, courts may consider facts that are "capable

of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). "[T]his rule permits a court … to take judicial notice of" certain properly-authenticated public documents. *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000).

### B.   Rule 12(b)(6) Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the allegations in a complaint are sufficient to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A claim is facially plausible if the facts alleged, accepted as true, create a reasonable inference the defendant is liable for his misconduct. *Id.* at 663. In making this determination, courts may not accept legal conclusions or "formulaic recitation of the elements of a cause of action." *Id.* at 678. Under Fed. R. Civ. P. 12(b)(6), courts may take judicial notice of documents that are based on or explicitly relied on in the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### C.   *Bivens* Claims[7]

Defendants argue the Court should not imply a *Bivens* remedy for Plaintiff's constitutional claims because pandemic management claims arise in a new *Bivens*

---

[7] The Court need not reach the issue of Plaintiff's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a), because the Court determines Plaintiff failed to allege a cognizable *Bivens* claim. Furthermore, the Court need not reach the exhaustion issue with respect to Plaintiff's constitutional claim under 28 U.S.C. § 1331 for prospective injunctive relief, because the Court finds the request is moot.

context, and special factors counsel hesitation in extending a judicially-created damages remedy into this new context.  Defs' Brief at 38-48.

Plaintiff counters that the Court should rule on the alleged Eighth Amendment claims, even if a damages remedy is not implied.  Pls' Opp. Brief at 6. The Court should then rule on what remedies are available.  *Id.*  Defendants disagree.  Reply Brief at 8.

For the reasons discussed below, the Court will not imply a *Bivens* damages remedy to Plaintiff's pandemic-era conditions of confinement claims.  The Court finds Plaintiff's Eighth Amendment claims for injunctive relief are moot. Nonetheless, the Court must determine whether the SAC plausibly alleges an Eighth Amendment violation which precludes application of the discretionary function exception to Plaintiff's FTCA claims.

Courts are strongly discouraged from implying a damages remedy against a federal government actor in a new constitutional context.  *Egbert v. Boule*, 596 U.S. 482, 491 (2022).  The Supreme Court has only implied a damages remedy against a federal actor for a constitutional violation on three occasions.  *Id.* at 490-491.  "In *Bivens*, the Court held that it had authority to create 'a cause of action under the Fourth Amendment" against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations."  *Id.* (quoting *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971)).  "[T]he Court … fashioned new causes of action under the Constitution" on only two other occasions, "first, for a former congressional staffer's Fifth

Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228 846 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)). *Id.* at 490–91. A case arises in a new *Bivens* context if it is meaningfully different from these three cases. *Id.* at 492. Courts may not expand a *Bivens* remedy to a new *Bivens* context if "special factors" counsel hesitation in doing so. *Id.* A single reason counseling hesitation is enough to preclude a new damages remedy. *Id.*

"[C]reating a cause of action is a legislative endeavor" which takes into consideration "economic and governmental concerns, administrative costs, and the impact on governmental operations systemwide." *Id.* at 491 (cleaned up). "Congress is 'far more competent than the Judiciary' to weigh such policy considerations." *Id.* (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). In "most every case" it is Congress "who should decide whether to provide for a damages remedy." *Id.* at 492.

The "uncertainty alone" of the "consequences" of a judicially-created damages remedy in a new *Bivens* context "forecloses relief." *Id*. at 493. Moreover, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Id.* This is true even when the alternative remedy does not provide complete relief. *Id.* When there is an alternative remedy, the only question a court should ask is whether the

judiciary is better equipped than Congress or the Executive Branch to decide whether to augment existing remedies.  *Id.*

Plaintiff's Eighth Amendment claims present a new *Bivens* context, despite sharing the same underlying constitutional amendment at issue in *Carlson*.  The context presented here is a pandemic of a novel virus, which required prison officials and employees to take significant measures to reduce the risk to all inmates and staff, and to determine how long those measures should remain in effect.  This case is meaningfully different from in *Carlson*.  *See Mammana v. Barben*, 856 F. App'x 411, 415 (3d Cir. 2021) (holding an Eighth Amendment conditions-of-confinement claim against federal officials is a different Eighth Amendment context than that in *Carlson*); *Thieme v. United States*, Civ. No. 21-682 (RMB-AMD) (D.N.J. Mar. 21, 2023), 2023 WL 2584102, at *13 (stating "no prior Supreme Court case addressed prison conditions in light of a global pandemic of a new and highly contagious virus.")  The Court must determine whether special factors counsel hesitation in implying a damages remedy in this new context.

A federal prisoner complaining of the conditions of confinement must file a grievance to seek redress through BOP's administrative remedy program.  *Kalu v. Spaulding*, 113 F.4th 311, 339 (3d Cir. 2024).  The availability of this alternative avenue for relief independently forecloses a *Bivens* action.  *Fisher v. Hollingsworth*, 115 F.4th 197, 208 (3d Cir. 2024).  The existence of an alternative remedy alone is enough to foreclose a damages remedy for the constitutional violations alleged, but there are other factors counseling hesitation.  In a nationwide pandemic affecting all

federal prisons, social and economic considerations and the potential systemwide impact on governmental operations are the types of issues better addressed by Congress in determining the type of remedy to provide for constitutional violations. *Thieme*, 2023 WL 2584102-RMB, at *13-14.

Finally, separation of powers concerns counsel against extending judicially-created damages remedies to prison conditions of confinement claims. Through Congress and the Attorney General, "BOP, rather than the judiciary, is ... tasked with oversight of prison administration." *Kalu v. Spaulding*, 113 F.4th 311, 339 (3d Cir. 2024). For these reasons, the Court declines to imply a damages remedy for Plaintiff's Eighth Amendment claims against the individual defendants. Defendants' facial attack on jurisdiction under Fed. R. Civ. P. 12(b)(1) over Plaintiff's Eighth Amendment *Bivens* claims will be granted.

**D.    Eighth Amendment Claim for Equitable Relief under 28 U.S.C. § 1331**

Defendants seek dismissal of Plaintiff's Eighth Amendment claims for injunctive relief as moot. Defs' Brief at 48-50. Plaintiff is not subject to the alleged unconstitutional conditions of confinement because he is no longer in BOP custody.[8] Plaintiff's release from prison renders his conditions of confinement claims for

---

[8] The Court takes judicial notice under Fed. R. Evid. 201(b) of the Federal Bureau of Prisons Inmate Locator ("Inmate Locator"), available at https://www.bop.gov/inmateloc/. According to the Inmate Locator, Plaintiff was released from BOP custody on April 18, 2024.

injunctive relief moot. *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993). Therefore, the Court finds it lacks subject matter jurisdiction over Plaintiff's Eighth Amendment claims seeking injunctive relief, and the claims will be dismissed under Fed. R. Civ. P. 12(b)(1).

### E.    Remedies Available for Plaintiff's Eighth Amendment Claims

Defendants contend the Court may not determine whether Plaintiff plausibly alleged an Eighth Amendment violation to defeat the discretionary function exception to his FTCA claims because he cannot bring his constitutional claims under *Bivens*, and his constitutional claims for injunctive relief are moot. Defs' Brief at 38. Plaintiff suggests that the Court should determine whether he has adequately alleged an Eighth Amendment claim, and then proceed to determine the type of relief available. Pl's Opp. Brief at 6.

Plaintiff may potentially seek a remedy for an Eighth Amendment violation under the FTCA. The Third Circuit held the qualified immunity analysis is inapplicable to the FTCA's discretionary function exception analysis because "FTCA claims premised on conduct that is plausibly alleged to violate the Constitution may not be dismissed on the basis of the discretionary function exception." *Xi v. Haugen*, 68 F.4th 824, 829 (2023). Therefore, the Court may consider, in the framework of the FTCA analysis, whether Plaintiff plausibly alleged an Eighth Amendment violation that renders the discretionary function exception inapplicable to his FTCA claims. *See, Cross v. Buschman*, No. 22-3194, 2024 WL 3292756, at *5 (3d Cir. July 3, 2024) (" The FTCA also permits 'civil action[s] ...

brought for a violation of the Constitution of the United States.' 28 U.S.C. § 2679(b)(2)(A)").

Therefore, the Court will consider whether Plaintiff plausibly alleges Eighth Amendment claims that render the discretionary function exception inapplicable to his FTCA claims. Before addressing exceptions to the FTCA's waiver of sovereign immunity, Defendants assert Plaintiff failed to allege the causation element of his FTCA claim concerning the Government's failure to protect him from COVID infection.

**F.    FTCA Claims**

The FTCA "is the source of federal courts' jurisdiction to hear tort claims made against the Government." *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008), *as amended* (Sept. 29, 2008); 28 U.S.C. § 1346(b)(1). There are six jurisdictional requirements for an FTCA Claim, the claim is

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* (cleaned up).

For the sixth requirement, Plaintiff's brings his FTCA claims under the New Jersey torts of negligence and gross negligence. Defendants contend Plaintiff failed to adequately allege causation for his negligence claims because Plaintiff only

14

speculates about the many possible causes for his COVID infection. *Id.* at 55-56. Plaintiff condemns every aspect of the Government's response to the COVID pandemic at FCI Fort Dix, but Plaintiff cannot point to the cause of his infection. *Id.* at 57.

Plaintiff responds that he adequately alleged causation, even without attaching his medical records to show precisely when he tested positive for COVID. Pl's Opp. Brief at 6. Plaintiff alleges Defendants "forcibly pressed together" COVID-negative inmates (including himself) with COVID-positive inmates, and this is what led to his infection. *Id.* at 6 (citing SAC ¶¶ 159, 160, 161, 163-64, 184-85, 211, 251-54). Furthermore, Plaintiff contends discovery of his medical records will aid in establishing causation. *Id.* at 7.

In reply, Defendants note the SAC does not clearly allege that Plaintiff was one of the COVID-negative inmates who was allegedly housed with COVID-positive inmates. Reply Brief at 7. Furthermore, Plaintiff also alleges his cellmate was one of the inmates who tested positive before Plaintiff was moved to another floor. *Id.* Defendants contend it is wholly speculative whether Plaintiff's transfer to another floor was the cause of his infection. *Id.*

The elements of a negligence and gross negligence claim under New Jersey law are the same but very in degree: (1) duty of care; (2) breach of that duty; (3) proximate cause; and (4) actual damages. Defendants suggest Plaintiff has not alleged proximate cause, nor can he, given the many potential intervening causes. This Court agrees. A "proximate cause" produces the complained of result,

unbroken by an intervening cause. *Bond v. Solvay Specialty Polymers, USA, LLC*, 583 F. Supp. 3d 643, 650–51 (D.N.J. 2022) (citing *Broach-Butts v. Therapeutic Alternatives, Inc.*, 191 A.3d 702, 711 (N.J. Super. Ct. App. 2018) (additional citations omitted)). Proximate cause is typically a jury issue but can be decided on a motion to dismiss if "no reasonable jury could find that the Plaintiff's injuries were not proximately caused" in the manner alleged by the plaintiff. *Id.* (quoting *Broach-Butts*, 191 A.3d at 711). If there are contributing causes of the alleged injury, a plaintiff must show negligence was a "substantial factor" contributing to the result. *Id.* (cleaned up).

Plaintiff tested negative for COVID when all inmates in his housing unit were tested on October 20, 2020. SAC ¶¶ 90, 92. At that point, supposedly, Plaintiff had not yet suffered an injury from Defendants' alleged negligence in protecting him from contracting COVID. Plaintiff's causation theory is that Defendant's negligently exposed him to COVID infection when they removed him from a single cell where he could socially distance from other inmates, and moved him into a twelve-man room with inmates who had been exposed and not retested, and likely were COVID-positive. Plaintiff did not allege the date he tested positive,[9] but he alleged that by November 10, 2020, all inmates in his housing unit tested positive.

Plaintiff's causation theory is too speculative. There are many potential intervening causes with a highly transmissible virus, and it would be virtually impossible to determine the cause. Therefore, the Court will grant Defendants' Rule

---

[9] Plaintiff tested positive on an unidentified date in October. Ahmedi Decl., ¶ 45.

12(b)(6) motion to dismiss Plaintiff's FTCA claim concerning the alleged negligent response to the COVID pandemic.  Even if Plaintiff adequately alleged causation, the discretionary function exception would preclude jurisdiction under the FTCA.

### 1.    *Discretionary Function Exception*

The FTCA's waiver of sovereign immunity

> shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

To decide whether challenged conduct falls within the discretionary function exception, the first step is to determine whether the act involves an element of judgment or choice.  *Xi v. Haugen*, 68 F.4th 824, 838 (3d Cir. 2023) (cleaned up).  If the answer to the first question is yes, a court must determine "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'"  *Id.*  The discretionary function exception was designed to protect the Government's public policy decision-making.  *United States v. Gaubert*, 499 U.S. 315, 323 (1991).  "Where Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function

exception…."  *Id.*  "[B]ecause government officials never have discretion to violate the Constitution, unconstitutional government conduct is per se outside the discretionary function exception."  *Id.* at 839.

### a.    *Constitutional claim exception*

In support of their Rule 12(b)(1) factual attack on subject matter jurisdiction under the FTCA, Defendants argue Plaintiff has not plausibly alleged an Eighth Amendment claim of deliberate indifference to a substantial risk to his health from exposure to COVID because he failed to plead the direct personal involvement of any defendant.  Defs' Brief at 61-63.  Likewise, Defendants argue Plaintiff fails to allege the personal involvement of any defendant in the determination to continue the lockdown for 29 months.  *Id.* at 63.  In response, Plaintiff contends the individuals who are responsible are all agents of the United States, and he will be able to identify those personally involved in the unconstitutional conduct after discovery.  Pl's Opp. Brief at 6.

"The Eighth Amendment prohibits any punishment which violates civilized standards and concepts of humanity and decency."  *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (cleaned up).  The Eighth Amendment imposes "affirmative duties on prison officials to provide humane conditions of confinement."  *Id.* (cleaned up).  Thus, a plaintiff must "allege facts showing (1) the deprivation he endured was sufficiently serious, and (2) the prison officials had a sufficiently culpable state of mind."  *Id.* (cleaned up).

The "deprivation element" requires a showing the plaintiff was "incarcerated under conditions posing a substantial risk of serious harm, which is less demanding than a probable risk of harm. *Id.* (cleaned up). "The second element is subjective and requires an inmate to sufficiently plead prison officials acted with deliberate indifference." *Id.* (citation omitted). "Deliberate indifference is effectively alleged where an inmate shows officials knew of, but disregarded, that the prison conditions posed an excessive risk to inmate health and safety." *Id.* (cleaned up). "Prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause" even if the harm ultimately is not averted. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Defendants, all of whom are Government agents employed by the BOP, acted reasonably by creating and implementing a continuously evolving Action Plan to contain the spread of the virus, based on the knowledge and resources available to them during the relevant time period, as described in the Reiser, Sassaman, and Ahmedi Declarations. *See Valentine v. Collier*, 978 F.3d 154, 163–65 (5th Cir. 2020) (finding the identified lapses in a state prison's response to COVID-19 and the fact that more could have been done, failed to establish deliberate indifference where the prison acted reasonably but unsuccessfully). Even accepting as true Plaintiff's allegations of imperfect implementation of the Action Plan at FCI Fort Dix, and that the measures were not enough to eliminate the risk of infection, Defendants were not deliberately indifferent by failing to adopt the "ideal" protections from COVID when circumstances and resources did not allow them to do so. *See Hope v. Warden York*

*Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (pretrial detainees did not show likelihood of success of establishing Defendants were deliberately indifferent to the spread of COVID because their containment measures were not effective).

Turning to the specific conduct alleged to have caused Plaintiff's infection with COVID, Plaintiff must show the Government, through its agents, acted with deliberate indifference. Plaintiff has not identified any defendant who: (1) knew he was medically vulnerable to COVID and required greater protection; (2) knew Plaintiff had tested negative for COVID from testing performed on October 20, 2020, and (3) was involved in the decision to move him from a single cell to a twelve-man cell with inmates who were likely infected. In other words, Plaintiff has not sufficiently pled deliberate indifference. Therefore, the SAC fails to allege a plausible Eighth Amendment claim that renders the discretionary function exception inapplicable to his FTCA claim. The Court turns to application of the discretionary function exception to Plaintiff's FTCA claim.

**b.**    ***Application of Discretionary Function Exception***

Defendants challenged conduct in his FTCA claim involved testing and quarantine of inmates during a pandemic. Defendants contend that, under the Action Plan, the lack of available resources for testing allowed for necessary discretion in when to test for COVID. Defs' Brief at 23-24. The Action Plan describes ideal and best practices for quarantine, but recognizes differences in the various facilities and permits each facility to determine the best available quarantine protocols. Defs' Brief at 25-26.

Plaintiff counters that even if his allegations of a constitutional violation do not defeat the discretionary function exception, the exception does not apply where the acts of a particular government agent seeking to implement the policy violates some other federal law, regulation, or express policy.  Pl's Opp. Brief at 1-2 (citing *Spotts v. U.S.*, 613 F.3d 559, 567 (5th Cir. 2010)).

First, as to Plaintiff's counterpoint, he relies on *Spotts*, a non-precedential Fifth Circuit decision.  Moreover, Plaintiff has not alleged Defendants violated a federal law, regulation or express policy by moving him from a single cell to a twelve-man cell with potentially COVID-positive inmates.

Second, BOP's Guidance, derived from guidance provided by CDC, OSHA, and DOJ, allowed discretion for each BOP institution in responding to the pandemic.  *See* Reiser Decl., Dkt. No. 48-3.  At the time of Plaintiff's exposure to COVID in October 2020, FCI Fort Dix was following BOP Quarantine Guidance, Version 2.0, 8/7/2020.  Ahmedi Decl. ¶ 20, Ex. 1, Dkt. No. 48-5 at 15-22.  Pursuant to BOP guidance, close contacts of expected or confirmed case(s) of COVID "should be placed" in exposure quarantine.  *Id.* at 16.  Plaintiff fell in this category.  BOP guidance further provided "Ideally, do NOT cohort individuals who are at higher risk of severe illness and mortality from COVID-19, including persons 65 and older or with certain co-occurring conditions."  *Id.* at 17.  Plaintiff had conditions that rendered him medically vulnerable to severe illness from COVID.

The preferred option for quarantine, according to BOP guidance, was "Separately, in single cells with solid walls and solid doors that close fully."  *Id.*

Transfer to another institution with more capacity to quarantine was the last resort, and was only permitted if no other options were available. *Id.* at 18. The second least preferred option for quarantine was "As a cohort, in the individuals' regularly assigned housing unit, but with no movement outside the unit." *Id.* at 18. "To the extent possible, quarantined inmates should be restricted from being transferred, having visits, or mixing with the general population." *Id.* at 20. "If an entire housing unit is being managed as exposure quarantine due to contact with a case from the same housing unit, the entire housing unit may need to be treated as a cohort and quarantine in place." *Id.* at 17. This is the guidance followed in Plaintiff's case. Exposure quarantine was used to observe and monitor asymptomatic but exposed inmates during an incubation period and keep them apart from other individuals. *Id.* at 22.

Defendants had discretion under this policy to choose from a list of quarantine procedures once an inmate, such as Plaintiff, was exposed. Ideal quarantine, as Plaintiff suggests, was for him to remain in a single cell. Defendants, however, had discretion to use other quarantine options, including the option exercised here, entire housing unit quarantine in place. Having satisfied the first element of the discretionary function exception, the remaining question is whether the discretion afforded Defendants here concerned public policy, which the discretionary function exception was intended to protect.

The purpose of permitting discretionary quarantine conditions was to permit individual facilities to take into account the availability of space and other resources

to provide the greatest level of protection available. This involved public policies of controlling infectious disease and, at the same time, maintaining care, custody and control of prisoners. *See, e.g.*, *Head v. United States*, No. CV BAH-22-238, 2024 WL 520037, at *9 (D. Md. Feb. 9, 2024) (describing public policy considerations of federal BOP institution during COVID pandemic); *see Rinaldi v. United States*, 904 F.3d 257, 273–74 (3d Cir. 2018) (cleaned up) ("housing and cellmate assignments are of the kind that the discretionary function exception was designed to shield."). Therefore, the Court would alternatively grant Defendants' motion to dismiss this FTCA claim upon the factual attack to jurisdiction under Fed. R. Civ. P. 12(b)(1).

### c.    *Application of the Quarantine Exception*

Plaintiff alleges that the lockdown protocols imposed at FCI Fort Dix to limit the spread of COVID caused him injury. SAC ¶¶ 153-185. Plaintiff defines lockdown:

> Imposed to separate inmate housing units. Inmates are assumed to be COVID-negative and to have not been exposed to the virus. Under this protocol, inmates leave the unit to receive their meals, go to medical appointments, purchase commissary, have limited outdoor recreation, etc. Very late into the lockdown, they were allowed indoor recreation as well.

SAC ¶ 156. The following services were denied or heavily curtailed for 29 months based on COVID-restrictions: outdoor access, religious services, visitation, gymnasium, leisure and law library, education and hobby craft. *Id.* ¶ 162. Plaintiff alleges that at least as early as December 22, 2020, the lockdown of the housing units

was pointless because inmates otherwise freely intermingled between housing units. *Id.* ¶ 185.

Defendants contend Plaintiff's FTCA claim regarding lockdown protocols at FCI Fort Dix during the COVID pandemic are barred by the quarantine exception to the FTCA. Defs' Brief at 50-51. Plaintiff disagrees, stating there no longer was a quarantine because inmates in all buildings were mixing, there was only a lockdown. Pl's Opp. Brief at 1-2. Defendants reply that Plaintiff's challenge to lockdown protocols involves the type of harm the quarantine exception was intended to protect. Defs' Reply Brief at 8-9.

The waiver of sovereign immunity for claims under § 1346(b)(1) does not apply to "[a]ny claim for damages caused by the imposition or establishment of a quarantine by the United States." 28 U.S.C. § 2680(f). By Plaintiff's own definition, the lockdown protocols were imposed at FCI Fort Dix to quarantine inmates within housing units at FCI Fort Dix. Thus, injury based on the lockdown protocols fall within the definition of "damages caused by establishment of a quarantine by the United States." *See Thieme*, 2023 WL 2584102, at *10 (holding section 2680(f) applies to "persons" who damages claims were caused by the Government's establishment of a quarantine); *Brown v. United States*, Civ. No. 3:22-124, 2023 WL 5167251, at *13 (N.D.W. Va. Apr. 28, 2023) ("imposition of a quarantine is expressly listed in 28 U.S.C. § 2680(f) as an area where the Government maintains its sovereign immunity"), *R & R adopted*, Civ. No. 3:22-124, 2023 WL 4744597 (N.D. W. Va. July 25, 2023); *See Wallace v. U.S. DOJ*, Civ. No. 21-3035-D, 2021 WL

24

2853692, at *2 (E.D.N.C. June 24, 2021), *aff'd*, No. 21-7017, 2022 WL 1024613 (4th Cir. Apr. 6, 2022) (holding the Government maintains immunity under the FTCA's quarantine exception "even if it acts negligently in carrying out the quarantine.")) Therefore, Plaintiff's FTCA lockdown claim falls within the FTCA's quarantine exception.  The Court will dismiss this claim based on Defendants' facial attack on jurisdiction under Fed. R. Civ. P. 12(b)(1).

## V.     CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion to dismiss Plaintiff's SAC.


An appropriate Order follows.


Date:  **January 28, 2025**              s/Renée Marie Bumb
                                         **RENÉE MARIE BUMB**
                                         **Chief United States District Judge**